KESSLER TOPAZ
MELTZER & CHECK, LLP
Jennifer L. Joost (Bar No. 296164)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001
jjoost@ktmc.com

*Attorneys for Plaintiff Brett Kaneshiro*

*[additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRETT KANESHIRO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YAHOO! INC., a Delaware Corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

I.      NATURE OF THE ACTION ................................................................................. 1

II.     PARTIES ............................................................................................................ 4

III.    JURISDICTION AND VENUE ......................................................................... 4

IV.     FACTUAL ALLEGATIONS ............................................................................. 5

        A.      Yahoo Collects and Promises to Safeguard the Personal

                Information ............................................................................................. 5

        B.      The Yahoo Breach and Yahoo's Failure to Timely Notify

                Plaintiff and Class members ................................................................. 7

        C.      Yahoo Knew or Should Have Known That It Was Vulnerable

                To the YAHOO Breach ....................................................................... 10

        D.      The Yahoo Breach Has Harmed Plaintiff and Class Members ................ 12

V.      CLASS ACTION ALLEGATIONS ................................................................. 15

VI.     CLAIMS ........................................................................................................... 17

VII.    PRAYER FOR RELIEF ................................................................................. 29

1    1.     Plaintiff Brett Kaneshiro ("Plaintiff"), individually and on behalf of all others

2    similarly situated, brings this class action against Defendant Yahoo! Inc. ("Yahoo" or

3    "Defendant"), a Delaware Corporation, headquartered in Sunnyvale, California.

4    2.     Plaintiff's allegations are based upon personal knowledge as to his own acts and

5    upon information and belief as to all other matters alleged herein, including the investigation of

6    counsel, publically available information, news articles, press releases, and additional analysis.

7    Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein

8    after a reasonable opportunity for discovery.

9    I.    **NATURE OF THE ACTION**

10    3.     Plaintiff brings this class action on behalf of himself and all persons whose personal

11    information was compromised as a result of the data breach announced by Yahoo on or about

12    September 22, 2016 (the "Class").

13    4.     Yahoo collects and maintains millions of records containing sensitive and personal

14    information from its more than 800 million users which it requires users registering for its

15    products—including its email service—to provide in order to access Yahoo's services.   The

16    personal information includes, *inter alia*, names, birthdates, phone numbers, passwords and answers

17    to security questions (collectively, "Personal Information").   In addition to this information, email

18    accounts of users often contain personal and sensitive data, such as log-in details for other accounts,

19    medical information, bank account information, tax returns, and account statements.

20    5.     On or about September 22, 2016, Yahoo announced that the Personal Information

21    for ***over 500 million Yahoo users*** was accessed from its systems in late 2014 by what it believes is

22    a state-sponsored actor—marking potentially ***the largest data breach of a single company in***

23    ***history*** (the "Yahoo Breach").

24    6.     Plaintiff and Class members provided and entrusted their Personal Information to

25    Yahoo based on Yahoo's representations in its Terms of Service and Privacy Policy that it would

26    safeguard that information and with the understanding that Yahoo would protect their Personal

27

28

Information against theft and not permit unauthorized access to and/or misuse of their data.  Indeed, Yahoo informs its users that "**Yahoo takes your privacy seriously**."[1]

7.     Yahoo promised to and had a duty to, but negligently failed to, implement, test and maintain reasonable cyber-security measures to safeguard Plaintiff's and Class members' Personal Information.

8.     Although Yahoo assumed a duty to protect Plaintiff's and Class members' Personal Information, contrary to the reasonable expectations of Yahoo users, including Plaintiff and Class members, Yahoo failed to reasonably maintain the Personal Information in a secure manner in breach of its express and implied agreements, and in violation of its legal duties and state laws.

9.     In addition to Yahoo's failure to adequately implement, test and maintain reasonable cyber-security measures to protect against the wrongful disclosure or compromise of the Personal Information, Yahoo failed to timely detect and notify Plaintiff and Class members of the Yahoo Breach in violation of applicable state data protection laws.

10.     Indeed, disclosure of the Yahoo Breach took approximately two years from the date of the hack and at least two months after rumors began circulating that hacked information from Yahoo users' accounts was being sold on the "dark web."[2]

11.     Commentators have suggested that Yahoo was aware of the Yahoo Breach long before it notified Plaintiff and Class members but unreasonably delayed disclosure in order to artificially bolster its valuation in its pending acquisition by Verizon Communications Inc. ("Verizon").[3]

---

[1]     Yahoo!  Inc.  Privacy  Center,  *available  at*  https://policies.yahoo.com/us/en/yahoo/ privacy/index.htm (last visited Sept. 27, 2016).

[2]     *See Yahoo Probes Possible Huge Data Breach*, BBC NEWS, available at http://www.bbc.com/news/technology-36952257 (Aug. 2, 2016); *see also* An Important Message to Yahoo Users on Security (Sept. 22, 2016), *available at* http://www.businesswire.com/news/home/20160922006198/en/.

[3] In July 2016, Yahoo announced that Verizon has agreed to pay $4.83 billion to purchase Yahoo, which is planned to be integrated with Verizon-owned AOL. *See* Cristina Alesci, et al., *Verizon Is Buying Yahoo for $4.8 Billion*, CNNMONEY (July 25, 2016), *available at* http://money.cnn.com/2016/07/25/technology/yahoo-verizon-deal-sale/.

CLASS ACTION COMPLAINT                                                                                    2

12.     Due to Yahoo's failure to properly safeguard Plaintiff's and Class members' Personal Information and timely notify its users of the Yahoo Breach, hackers may have had access to the Class' Personal Information for years undetected, exposing Plaintiff and Class members to fraud, identity theft, and financial harm, and to a heightened imminent risk of such harm in the future.

13.     Moreover, because users often recycle passwords and security answers across multiple services, cyber-security experts have warned that the impact of the Yahoo Breach could reverberate throughout the personal and financial accounts of Plaintiff and Class members, including exposing the Class' bank, retail and other accounts to fraud or identity theft.[4]

14.     Incredibly, Yahoo has failed to provide the Class any assistance to limit the fallout from its misconduct.

15.     As a result of Yahoo's wrongful conduct, Plaintiff and Class members have suffered and will continue to suffer actual damages, including, *inter alia*, costs associated with mitigating the real and imminent risk of fraud and identity theft, such as costs for effective credit monitoring services and identity theft insurance, and other costs associated with re-issuing credentials.  Plaintiff and Class members are also entitled to statutory damages as a result of Yahoo's wrongful conduct.

16.     Accordingly, Plaintiff, on behalf of himself and other members of the Class, asserts claims for negligence, breach of express and implied contract, violation of the California data protection statute, and violation of the California Unfair Competition Law.  *See* California Civil Code § 1798.80 *et seq.*; Cal. Bus. & Prof. Code § 17200 *et seq.*  Plaintiff also seeks a declaratory judgment that Section 20 of Yahoo's Terms of Service which purports to limit Defendant's liability for "unauthorized access" to its users' data is unenforceable because it is procedurally and substantively unconscionable and/or violates Cal. Civ. Code § 1668 and/or Cal. Commercial Code § 2719.

---

[4] Angela Moon and Amy Tennery, *Some Yahoo Users Close Accounts Amid Fears Breach Could Have Ripple Effects*, YAHOO! TECH (Sept. 23, 2016), *available at* https://www.yahoo.com/tech/yahoo-data-breach-angry-users-close-accounts-181802721--finance.html.

CLASS ACTION COMPLAINT                                                                   3

17.     Plaintiff further asserts claims on behalf of himself and a Massachusetts Sub-Class (defined below) for violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. L. ch. 93A.

## II.     PARTIES

18.     Plaintiff Brett Kaneshiro resides in Hyde Park, Massachusetts and is a citizen of Massachusetts.  Plaintiff provided his Personal Information to Yahoo in exchange for access to Defendant's email service and Yahoo's promise to safeguard his Personal Information.  Plaintiff Kaneshiro has used his Yahoo account to transmit or receive sensitive information, including, *inter alia*, his birth certificate and social security card, and banking and investment account information. Plaintiff Kaneshiro entrusted his Personal Information to Yahoo with the reasonable expectation and understanding that Yahoo would protect and safeguard that information from compromise, disclosure, and/or misuse by unauthorized users.

19.     Defendant Yahoo! Inc. is a Delaware corporation with its principal place of business located at 701 1st Ave, Sunnyvale, CA 94089.  Yahoo is a leading global internet services company that was founded in 1994 by Jerry Yang and David Filo, graduate students at Stanford University in California. Yahoo boasts more than 800 million users globally per month and provides users with online services, including email service, and access to other Web sites.  In July 2016, Yahoo announced that Verizon has agreed to pay $4.83 billion to purchase Yahoo, which is planned to be integrated with Verizon-owned AOL.[5]

## III.     JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit has been brought as a class action on behalf of a proposed Class including millions of members, the aggregate claims of the putative Class members exceed $5 million exclusive of interest and costs, and one or more of the members of the putative Class are citizens of a different state than Yahoo.

---

[5] Cristina Alesci, et al., *Verizon Is Buying Yahoo for $4.8 Billion*, CNNMONEY (July 25, 2016), *available at* http://money.cnn.com/2016/07/25/technology/yahoo-verizon-deal-sale/.

21.     This Court has jurisdiction over Yahoo because its principal place of business is located within this District, it conducts significant business in this District, has sufficient minimum contacts with the District, and much of the relevant conduct occurred in this District.  In addition, per Yahoo's Terms of Service, Yahoo submits to the personal jurisdiction of the federal courts located in Santa Clara, California.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because: Yahoo resides within this District, transacts business, is found, and/or has agents in this District; a substantial part of the events giving rise to Plaintiff and the Class' claims arose in the District; and Yahoo has sufficient contacts with California and this District.   In addition, per Yahoo's Terms of Service, any cause of action arising out of or relating to the Terms of Service or the relationship between Yahoo and its users "shall be brought exclusively in the courts located in the county of Santa Clara, California or the U.S. District Court for the Northern District of California."

## IV.   FACTUAL ALLEGATIONS

### A.     YAHOO COLLECTS AND PROMISES TO SAFEGUARD THE PERSONAL INFORMATION

23.     Yahoo is a leading global Internet communications, commerce and media company that offers a comprehensive branded network of services, including email service, to more than 800 million individuals worldwide.

24.     To access Yahoo's products, such as email, Fantasy Sports, and Flickr, Yahoo requires its users to provide, *inter alia,* their name, mobile phone, username, password, date of birth and gender.  For some products and services, Yahoo also requires a user's address, Social Security number, and/or information about a user's assets.  Yahoo collects and maintains this Personal Information on its network.

25.     Yahoo states in its Terms of Service that "[b]y accessing and using the Yahoo Services, you accept and agree to be bound by the terms and provision of [the Terms of Service]."[6]

---

[6]  *See* Yahoo! Inc. Terms of Service (the "Terms of Service") at ¶ 1, *available at* https://policies.yahoo.com/us/en/yahoo/terms/utos/index.htm (last visited Sept. 27, 2016).

26.     According to Yahoo's Terms of Service, data collected from users in the registration process is subject to Yahoo's Privacy Policy.[7]     Specifically, the Terms of Service state that "[r]egistration [d]ata and certain other information about you are subject to [Yahoo's] applicable privacy policy."[8]

27.     The Terms of Service provides a link to the "full Yahoo Privacy Policy at https://policies.yahoo.com/us/en/yahoo/privacy/index.html" and informs users that "through your use of the Yahoo Services you consent to the collection and use (as set forth in the applicable privacy policy)" of Personal Information.  The Terms of Service and incorporated Privacy Policy apply to all users of Yahoo products, including Plaintiff and Class members.

28.     Yahoo's Privacy Policy acknowledges the importance of safeguarding users' Personal Information and informs its users, including Plaintiff and Class members, that "*Yahoo takes your privacy seriously*."[9]

29.     In its Privacy Policy, Yahoo assures users that it will not share Personal Information with other people or non-affiliated companies except to provide products and services the users request or when it has permission.[10]

30.     The Privacy Policy also provides that Yahoo:

limits access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs.[11]

31.     The Privacy Policy further informs users that Yahoo has "physical, electronic, and procedural safeguards" in order to "comply with federal regulations to protect personal information."[12]

32.     Based on Yahoo's promises and assurances in its Terms of Service and Privacy Policy, Plaintiff and Class members registered for Yahoo services and provided their Personal

---

[7] *See* Terms of Service at ¶ 4.

[8] *Id.*

[9] Privacy Policy.

[10] *Id.* at Information Sharing and Disclosure.

[11] *Id.*

[12] *Id.*

Information in exchange for those services with the understanding and reasonable expectation that Yahoo would protect and safeguard the Personal Information from compromise, disclosure, and/or misuse by unauthorized users.

33.    Although Yahoo assumed a duty to protect Plaintiff's and Class members' Personal Information, contrary to the reasonable expectations of Yahoo users and Yahoo's assurances, Yahoo failed to reasonably maintain this information in a secure manner and failed to safeguard the Personal Information from compromise, disclosure and/or misuse by unauthorized parties, in violation of legal duties, in breach of its express and implied agreements, and in violation of state laws.

## B.    THE YAHOO BREACH AND YAHOO'S FAILURE TO TIMELY NOTIFY PLAINTIFF AND CLASS MEMBERS

34.    On or about September 22, 2016, Yahoo announced in a press release that, in late 2014, Defendant sustained a massive data breach affecting over ***500 million Yahoo users'*** account information—potentially ***the largest data breach of a single company in history*** (the "Press Release").[13]

35.    The Yahoo Breach included, *inter alia*, theft of account details including user names, scrambled passwords, birth dates, telephone numbers, security questions and other personal information.  Yahoo has said that it believes that the breach was perpetrated by a state-sponsored actor.

36.    The Press Release stated in part:

> A recent investigation by Yahoo! Inc. (NASDAQ: YHOO) has confirmed that a copy of certain user account information was stolen from the company's network in late 2014 by what it believes is a state-sponsored actor.  The account information may have included names, email addresses, telephone numbers, dates of birth, hashed passwords (the vast majority with bcrypt) and, in some cases, encrypted or unencrypted security questions and answers . . . . [T]he investigation has found no evidence that the state-sponsored actor is currently in Yahoo's network.[14]

---

[13]  An Important Message to Yahoo Users on Security (Sept. 22, 2016), *available at* http://www.businesswire.com/news/home/20160922006198/en/ (last visited Sept. 28, 2016).
[14] *Id.*

37.    The Press Release "encouraged" users to "review their online accounts for suspicious activity and to change their password and security questions and answers for any other accounts on which they use the same or similar information used for their Yahoo account."[15]

38.    In the wake of the Yahoo Breach, Yahoo also advised users to take steps to prevent or mitigate misuse of the stolen data by implementing several security measures such as placing a "security freeze" (also known as a "credit freeze") on their credit files.[16]

39.    Cybersecurity experts posit that a number of factors likely led to the breach, such as sloppy security practices by Yahoo, instability from high turnover on its security team and the companywide stress of finding a buyer for the company.[17]

40.    Upon information and belief, Yahoo learned of the Yahoo Breach months before it made the actual announcement on September 22, 2016, and failed to notify its users and the public in an effort to artificially bolster its valuation in its pending acquisition by Verizon.

41.    Numerous news articles suggest that Yahoo CEO Marissa Mayer has known that Yahoo was investigating a serious data breach since at least July 2016, but withheld the information from Yahoo users, investors, regulators and acquirer Verizon.  According to reports, Mayer was aware that her company received a tip in July 2016 from an anonymous hacker who claimed that information from 200 million accounts was stolen.[18]

42.    Despite possessing specific information concerning a massive breach, Yahoo misled the Class and the market concerning the security of sensitive information in its custody.  For example, in a September 9, 2016[19] regulatory filing with the Securities and Exchange Commission

---

[15] *Id.*

[16] *See id.*  A security freeze prevents a credit report from being release in response to a new credit application.  To be effective, a separate credit freeze is generally required to be placed with each major credit reporting company.  A fee is generally associated with each freeze.

[17] Tracy Lien, *It's Strange Yahoo Took 2 Years to Discover a Data Breach, Security Experts Say*, L.A. TIMES (Sept. 23, 2016).

[18] *See* Madhumita Murgia, et al., *Marissa Mayer Knew of Yahoo Breach Probe in July*, Financial Times (Sept. 23, 2016); *Yahoo 'Aware' Hacker Is Advertising 200 Million Supposed Accounts on Dark Web*, MOTHERBOARD (Aug. 1, 2016), *available at* http://motherboard.vice.com/read/yahoo-supposed-data-breach-200-million-credentials-dark-web (last visited Sept. 28, 2016).

[19] *See* Yahoo! Inc., Schedule 14A, filed September 9, 2016.

("SEC"), Yahoo stated it had no knowledge of "any incidents of, or third party claims alleging" "security breaches, unauthorized access or unauthorized use" of its Information Technology ("IT") systems.

43.     Disclosure of the Yahoo Breach was announced only thirteen days after Yahoo's September 9, 2016 SEC filing and approximately two years from the date of the hack and at least two months after rumors began circulating that Yahoo users' accounts were hacked and the data was being sold on the "dark web."

44.     According to the Ponemon Institute, a research firm that focuses on cybersecurity and privacy, it takes on average 201 days for a company to detect a data breach.[20]  Technology companies tend to be more advanced and typically uncover attacks much sooner than their less tech-savvy counterparts.[21]

45.     Had Yahoo taken reasonable steps to protect and maintain the security of its network, it would have quickly detected the intrusion and could have alerted Plaintiff and members of the Class to the Yahoo Breach.  Security experts have said that "Yahoo [A global technology company] should have had the security infrastructure to detect [the breach] themselves, instead of accidentally discovering" it two years later.[22]

46.     Due to Yahoo's failure to properly safeguard the Personal Information and timely disclose the Yahoo Breach, hackers may have accessed millions of Yahoo accounts for years undetected, exposing Plaintiff and Class members to fraud, identity theft, and financial harm, and to a heightened imminent risk of such harm in the future.

47.     In light of Yahoo's failure to detect or disclose the Yahoo Breach for two years, Senator Mark Warner from Virginia, a member of the Senate Intelligence and Banking Committees and co-founder of the bipartisan Senate Cybersecurity Caucus, called on the SEC to investigate

---

[20] Tracy Lien, *It's Strange Yahoo Took 2 years to Discover a Data Breach, Security Experts Say*, L.A. TIMES (Sept. 23, 2016).

[21] *Id.*

[22] *Id.*

Yahoo's knowledge of the breach and whether Yahoo fulfilled its obligations to investors and the public about the security of its IT systems.[23]

48.     In addition, six U.S. Senators, in a joint letter to the Company, have demanded that it explain why the Yahoo Breach only came to light in September, 2016 and criticized the Company's handling of the breach as "unacceptable."[24]   The lawmakers said they were "disturbed" that the 2014 breach was detected so long after it occurred.[25]

## C.     YAHOO KNEW OR SHOULD HAVE KNOWN THAT IT WAS VULNERABLE TO THE YAHOO BREACH

49.     Yahoo knew or should have known that its IT system and network was vulnerable to attacks by third-parties.  Yahoo, however, failed to take corrective measures or implement proper safeguards to protect users' Personal Information even after Yahoo learned of prior security breaches.

50.     Specifically, in July 2012, hackers posted online what they claimed was login information for more than 450,000 Yahoo users.  The hack was meant as a "wake-up call, and not as a threat" to alert Yahoo to "security holes" in Yahoo's Web servers.[26]

51.     Yahoo confirmed the 2012 breach and assured users that it takes "security very seriously and invest[s] heavily in protective measures to ensure the security of . . . users and their data."[27]   Yahoo also assured users that it intended to fix the vulnerability that led to the disclosure of the data.[28]

52.     Despite these assurances, according to current and former employees of Yahoo, Yahoo did not invest in the security infrastructure necessary to thwart sophisticated hackers that are

---

[23]  Elizabeth Dexheimer, *Yahoo Should Face SEC Probe over Data Breach, Senator says*, BLOOMBERG (Sept. 26, 2016).

[24]  Dustin Volz, *U.S. Senators Accuse Yahoo of 'Unacceptable' Delay in Hack Discovery*, REUTERS (Sept. 27, 2016).

[25]  *Id.*

[26]  Doug Gross, *Yahoo Hacked, 450,000 Passwords Posted Online*, CNN, *available at* http://www.cnn.com/2012/07/12/tech/web/yahoo-users-hacked/ (July 13, 2012).

[27]  *Id.*

[28]  *Id.*

now considered standard and were implemented by other technology companies such as Google.[29] For example, in response to an earlier hack into both Yahoo and Google customer email accounts, "Google hired hundreds of security engineers with six-figure signing bonuses, invested hundreds of millions of dollars in security infrastructure and adopted a new internal motto, 'Never again,' to signal that it would never again allow anyone—be they spies or criminals—to hack into Google customers' accounts."[30]

53.     Indeed, *The New York Times* reported on September 28, 2016 that Mayer focused on creating a "cleaner look" for Yahoo products, rather than making the necessary security improvements.  Requests by Yahoo's security team were often ignored because of concerns that the inconvenience of added protection would deter people from using Yahoo's products.[31]

54.     As a result of Yahoo's failure to implement proper and necessary cyber-security measures, in July 2016, journalists began receiving samples of Yahoo user credentials.  Several weeks later, Peace, a cybercriminal linked to data breaches at MySpace and LinkedIn, came forward with 5,000 account information samples and claimed to be selling 200 million more.[32] Yahoo dismissed Peace's claims as illegitimate.

55.     In light of prior security breaches, Yahoo knew or should have known that its network was vulnerable to attacks by third-parties and should have taken steps to properly safeguard and protect users' Personal Information.  Indeed, given Yahoo's previous data breach, it was foreseeable to Yahoo that the Personal Information of Plaintiff and members of the Class was an attractive target for hackers and could be accessed if Yahoo did not implement, test and maintain the proper cyber-security measures.

56.     The Yahoo Breach was the result of Yahoo's failure to abide by its own assurances to users, state and federal regulations, and industry standards and best practices, which required

---

[29] Nicole Perlroth and Vindu Goel, *Defending Against Hackers Took a Back Seat at Yahoo, Insiders Say*, NYTIMES (Sept. 28, 2016).

[30] *Id.*

[31] *Id.*

[32] *Yahoo Probes Possible Huge Data Breach*, BBC NEWS, *available at* http://www.bbc.com/news/technology-36952257 (Aug. 2, 2016).

CLASS ACTION COMPLAINT                                                                                    11

Yahoo to take reasonable steps to implement, test and maintain adequate cyber-security measures to protect the Personal Information of Plaintiff and Class members.

### D.   THE YAHOO BREACH HAS HARMED PLAINTIFF AND CLASS MEMBERS

57.   Yahoo knowingly collected and maintained the Personal Information of Plaintiff and members of the Class, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused and/or disclosed to unauthorized parties.

58.   Plaintiff and members of the Class entrusted their Personal Information to Yahoo with the understanding that Yahoo would safeguard the information from unauthorized access and/or use.

59.   It was foreseeable that if Yahoo failed to take reasonable cyber-security measures, the Personal Information of Plaintiff and members of the Class could be stolen, lost, misused, and/or disclosed to unauthorized users.  Yahoo knew or should have known that its users' Personal Information was an attractive target for cyber attackers, particularly in light of highly-publicized prior data breaches, and Yahoo failed to take reasonable precautions to safeguard the Personal Information of its users, including Plaintiff and members of the Class.

60.   By failing to implement necessary cyber-security measures to protect its users' Personal Information, Yahoo departed from the reasonable standard of care and breached its duties to Plaintiff and members of the Class.

61.   Plaintiff and millions of Class members have been seriously harmed by Yahoo's failure to implement proper cyber-security measures and safeguards to protect their Personal Information.  Sensitive and confidential information such as names, birthdates, passwords and answers to security questions has been stolen and is now (and for the past two years has been) in the hands of criminals to be bought, sold, or otherwise distributed for the purpose of misappropriating Plaintiff's and Class members' identities or property.

62.     As a result of Yahoo's wrongful conduct, Plaintiff and Class members face a serious and immediate threat of identity theft, fraud, drained bank accounts, phishing, and opening and re-opening of accounts in their name.  Fraudulent use of the information can continue for years.

63.     Javelin Strategy & Research reported in a 2014 Identity Theft Study that "[d]ata breaches are the greatest factor for identity fraud."[33]  In fact, "[i]n 2013, one in three customers who received notification of a data breach became a victim of fraud."[34]

64.     In addition, due to the scale of the Yahoo Breach, and because users often recycle passwords and security answers across multiple services, cyber-security experts have warned the impact of the breach could reverberate throughout the personal and financial accounts of Plaintiff and Class members, including making Yahoo users' bank, retail and other accounts vulnerable to fraud or identity theft.

65.     Sensitive information is often shared via email and hackers may have gained access to Yahoo users' social security numbers, tax payer identification numbers, financial account numbers, drivers' license numbers and other confidential information.  For example, this type of information is often transmitted via email in a home purchase or mortgage transaction.  Indeed, data security experts have likened the Yahoo Breach to the "security equivalent of ecological disasters."[35]

66.     A primary concern for Plaintiff and members of the Class is a cybercriminal technique known as "credential stuffing," which works by using leaked username and password combinations at a number of websites in an attempt to gain unauthorized access to accounts.  Given that the Yahoo Breach occurred over two years ago, the Personal Information of Plaintiff and members of the Class may already have been used to hack other services and accounts.

---

[33] *A New Identity Fraud Victim Every Two Seconds in 2013 According to Latest Javelin Strategy & Research Study*, JAVELIN STRATEGY (Feb. 5, 2014), *available at* https://www.javelinstrategy.com/press-release/new-identity-fraud-victim-every-two-seconds-2013-according-latest-javelin-strategy.

[34] *Id.*

[35] Raphael Satter, *Yahoo Email Not Only Thing Breached*, U.S. NEWS (Sept. 27, 2016).

67.     Section 20 of Yahoo's Terms of Service purports to limit Defendant's liability for "unauthorized access" to its users' data.   Yahoo admits in its Terms of Service that "some jurisdictions do not allow the exclusion of certain warranties or the limitation or exclusion of liability for incidental or consequential damages" and that "some of the above limitations of Sections 19 and 20 may not apply []."

68.     Section 20 of Yahoo's Terms of Service, purporting to limit Yahoo's liability for "unauthorized access" to its users' data is unenforceable because it is procedurally and substantive unconscionable and against public policy, and/or because it violates Cal. Civ. Code § 1668 and/or Cal. Commercial Code § 2719.

69.     As a direct and proximate result of Yahoo's breach of its legal duties, express and implied contracts with Plaintiff and members of the Class and violation of state data protection and consumer protection laws, Plaintiff and members of the Class have suffered damages and will continue to suffer damages including, but not limited to:  (l) the loss of the opportunity to control how their Personal Information is used; (2) the diminution in the value and/or use of their Personal Information entrusted to Yahoo with the understanding that Yahoo would safeguard their Personal Information against theft and not allow access and misuse of their Personal Information by others; (3) the compromise, disclosure, theft and/or misuse of their Personal Information; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of Personal Information; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Yahoo Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and/or Personal Information misuse; (6) the continued risk to their Personal Information, which remains in Yahoo's possession and is subject to further breaches so long as Yahoo fails to undertake appropriate and adequate measures to protect the Personal Information in its possession; and (7) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the personal information compromised as a result of the Yahoo Breach.

---

CLASS ACTION COMPLAINT                                                                        14

70.     As a further result of Yahoo's failure to provide adequate safeguards for the Personal Information and failure to timely notify Plaintiff and members of the Class that their Personal Information was compromised, Plaintiff and members of the Class have been harmed in that they have been unable to take the necessary precautions to mitigate their damages by preventing future identity theft and/or fraud.

## V.     CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class and Sub-Class:

> **Nationwide Class**: All persons whose personal information was compromised as a result of the data breach announced by Yahoo on or about September 22, 2016 (the "Nationwide Class" or "Class").

> **Massachusetts Sub-Class**: All residents of Massachusetts whose personal information was compromised as a result of the data breach announced by Yahoo on or about September 22, 2016 (the "Massachusetts Sub-Class" or "Sub-Class").[36]

72.     Excluded from the proposed Class and Sub-Class are Yahoo, as well as its agents, officers, and directors, and their families, as well as its parent companies, subsidiaries, and affiliates.  Any judicial officer assigned to this case is also excluded.  Plaintiff reserves the right to revise the definition of the Class and Sub-Class based upon subsequently discovered information.

73.     This action is brought and may be properly maintained as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3).

74.     The Classes are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are millions of proposed Class members throughout the United States.

75.     Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes.  The common questions of law and fact include but are not limited to:

> a.     whether Yahoo failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of the Personal Information of Plaintiff and members of the Classes;

---

[36] The Nationwide Class and the Massachusetts Sub-Class are collectively referred to as "the Classes."

b.   whether Yahoo compromised and/or disclosed by any means the Personal Information of Plaintiff and members of the Classes;

c.   whether Yahoo failed to act reasonably in securing the Personal Information of Plaintiff and members of the Classes;

d.   whether Yahoo's conduct was negligent;

e.   whether Yahoo breached its express and/or implied contracts with Plaintiff and members of the Classes by failing to protect their Personal Information;

f.   whether Section 20 of Yahoo's Terms of Service, purporting to limit Yahoo's liability for "unauthorized access" to its users' data is unenforceable because it is procedurally and substantively unconscionable and against public policy, and/or because it violates Cal. Civ. Code § 1668 and/or Cal. Commercial Code § 2719;

g.   whether Yahoo violated § 1798.80 *et seq.* of the California Civil Code;

h.   whether Yahoo violated Cal. Bus. & Prof. Code § 17200, *et. seq.*; and

i.   whether Plaintiff and members of the Classes are entitled to actual damages, statutory damages, treble damages, punitive damages, restitution, restitutionary disgorgement, and/or other equitable or declaratory relief.

76.   Plaintiff's claims are typical of the claims of the Classes.  As alleged herein, Plaintiff and members of the Classes all sustained damages arising out of the same course of unlawful conduct by Defendant.

77.   Plaintiff is willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto.  Plaintiff will fairly and adequately protect the interests of the Classes and has no interests adverse to, or which conflict with, the interests of the other members of the Classes.

78.   Plaintiff's interests are co-extensive with, and not antagonistic to, those of the absent members of the Classes.  Plaintiff will undertake to represent and protect the interests of the absent members of the Classes.

79.   Plaintiff has engaged the services of the undersigned counsel.   Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and the absent members of the Classes.

80.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

81.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

82.     The interest of members of the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.   Prosecution of the action through multiple representatives would be objectionable and Plaintiff anticipates no difficulty in the management of this matter as a class action.

## VI.     CLAIMS

### FIRST CLAIM
### NEGLIGENCE
### On behalf of the Nationwide Class

83.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

84.     Yahoo knowingly collected and maintained the Personal Information of Plaintiff and members of the Class, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused and/or disclosed to unauthorized parties.

85.     Yahoo owed Plaintiff and members of the Class a duty to take reasonable steps to maintain and protect against any dangers to Plaintiff's and members of the Class' Personal Information presented by cyber-attackers.  This duty included, among other things, maintaining and testing its cyber-security systems, taking other reasonable security measures to protect and adequately secure Personal Information of Plaintiff and members of the Class from unauthorized access, and taking reasonable steps to ensure that hackers did not compromise the systems and/or gain access to its users' Personal Information.

86.     Yahoo owed a duty of care to Plaintiff and members of the Class because it was foreseeable that they would be harmed by Yahoo's inadequate cyber-security practices.  By failing to implement necessary measures to protect its users' Personal Information, Yahoo departed from the reasonable standard of care and breached its duties to Plaintiff and members of the Class.

87.     It was foreseeable that if Yahoo did not take reasonable security measures, the Personal Information of Plaintiff and members of the Class could be stolen, lost, misused, and/or disclosed to unauthorized users.  Yahoo knew or should have known that its users' Personal Information was an attractive target for cyber attackers, particularly in light of highly-publicized prior data breaches, and Yahoo failed to take reasonable precautions to safeguard the Personal Information of its users, including Plaintiff and members of the Class.

88.     As a direct and proximate result of Yahoo's failure to exercise reasonable care and deploy reasonable cyber-security measures, the Personal Information of Plaintiff and members of the Class was accessed by cyber-attackers and can be used to commit identity theft and/or fraud.

89.     But for Yahoo's failure to implement and maintain adequate cyber-security measures to protect Plaintiff's and member of the Class' Personal Information, Plaintiff's and members of the Class' Personal Information would not have been compromised, stolen, and/or disclosed to unauthorized users, Plaintiff and members of the Class would not have been injured, and Plaintiff and members of the Class would not be at a heightened future risk of identity theft and/or fraud.

90.     Yahoo had and continues to have a duty to timely disclose that Plaintiff's and members of the Class' Personal Information within its possession might have been compromised, lost, stolen, misused and/or disclosed to unauthorized parties and precisely the types of information compromised.

91.     Yahoo unlawfully breached its duty to timely disclose to Plaintiff and members of the Class the fact that their Personal Information was compromised, lost, stolen, misused and/or disclosed to unauthorized parties and precisely the type of information compromised.

92.     As a result of Yahoo's negligence, Plaintiff and members of the Class have suffered damages including, but not limited to:  (l) the loss of the opportunity to control how their Personal Information is used; (2) the diminution in the value and/or use of their Personal Information entrusted to Yahoo with the understanding that Yahoo would safeguard their Personal Information against theft and not allow access and misuse of their Personal Information by others; (3) the compromise, disclosure, theft and/or misuse of their Personal Information; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use

of Personal Information; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Yahoo Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and/or Personal Information misuse; (6) the continued risk to their Personal Information, which remains in Yahoo's possession and is subject to further breaches so long as Yahoo fails to undertake appropriate and adequate measures to protect the Personal Information in its possession; and (7) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Yahoo Breach.

93.     As a further result of Yahoo's negligence in failing to timely notify Plaintiff and members of the Class that their Personal Information was compromised, Plaintiff and members of the Class have been harmed in that they have been unable to take the necessary precautions to mitigate their damages by preventing future identity theft and/or fraud.

## SECOND CLAIM
## BREACH OF EXPRESS CONTRACT
### On behalf of the Nationwide Class

94.     Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

95.     Pursuant to Yahoo's Terms of Service and Privacy Policy, Plaintiff and members of the Class entered into express contracts with Yahoo whereby Plaintiff and members of the Class provided their Personal Information to Yahoo in exchange for the use of Yahoo's services and its promise to protect and safeguard that Personal Information.

96.     Yahoo's Terms of Service declares that the "relationship between the parties shall be governed by the laws of the State of California without regard to its conflict of law provisions."

97.     Yahoo's Terms of Service explicitly incorporates its Privacy Policy.

98.     Under its express contracts with Plaintiff and Class members, Yahoo agreed, *inter alia*, to provide "physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information []."

99.     By failing to adequately test and implement cyber-security measures and by permitting the Personal Information of Plaintiff and members of the Class to be compromised and/or disclosed to unauthorized users, Yahoo breached the express terms of its Terms of Service and Privacy Policy.

100.     Plaintiff and members of the Class would not have provided their Personal Information to Yahoo without the promise and understanding that Yahoo would protect and safeguard their Personal Information.

101.     Yahoo breached its express contracts with Plaintiff and Class members by failing to safeguard the Personal Information of Plaintiff and members of the Class and by permitting the compromise and/or disclosure of that Personal Information to unauthorized users.

102.     As a direct and proximate result of Yahoo's breach of its express  contracts with Plaintiff and members of the Class, Plaintiff and members of the Class have suffered damages and will continue to suffer damages including, but not limited to:  (l) the loss of the opportunity to control how their Personal Information is used; (2) the diminution in the value and/or use of their Personal Information entrusted to Yahoo with the understanding that Yahoo would safeguard their Personal Information against theft and not allow access and misuse of their Personal Information by others; (3) the compromise, disclosure, theft and/or misuse of their Personal Information; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of Personal Information; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Yahoo Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and/or Personal Information misuse; (6) the continued risk to their Personal Information, which remains in Yahoo's possession and is subject to further breaches so long as Yahoo fails to undertake appropriate and adequate measures to protect the Personal Information in its possession; and (7) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Yahoo Breach.

### THIRD CLAIM
### BREACH OF IMPLIED CONTRACT
### On behalf of the Nationwide Class

103.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

104.    Plaintiff and members of the Class entered into implied contracts with Yahoo under which Plaintiff and members of the Class provided Personal Information in order to receive Yahoo's services with the understanding that Yahoo agreed to safeguard and protect that Personal Information.

105.    Plaintiff and members of the Class would not have provided their Personal Information to Yahoo without the understanding that Yahoo would protect and safeguard their Personal Information.

106.    Yahoo breached its implied contracts with Plaintiff and Class members by failing to safeguard the Personal Information of Plaintiff and members of the Class and by permitting the compromise and/or disclosure of that Personal Information to unauthorized users.

107.    As a direct and proximate result of Yahoo's breach of its implied contracts with Plaintiff and members of the Class, Plaintiff and members of the Class have suffered damages and will continue to suffer damages including, but not limited to:  (l) the loss of the opportunity to control how their Personal Information is used; (2) the diminution in the value and/or use of their Personal Information entrusted to Yahoo with the understanding that Yahoo would safeguard their Personal Information against theft and not allow access and misuse of their Personal Information by others; (3) the compromise, disclosure, theft and/or misuse of their Personal Information; (4) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of Personal Information; (5) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Yahoo Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft and/or Personal Information misuse; (6) the continued risk to their Personal Information, which remains in Yahoo's possession and is subject to further breaches so long as Yahoo fails to undertake appropriate and adequate measures to protect

the Personal Information in its possession; and (7) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Yahoo Breach.

**FOURTH CLAIM**
**DECLARATORY JUDGMENT**
**On behalf of the Nationwide Class**

108.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

109.    There is an active case and controversy among Plaintiff and members of the Class and Yahoo.

110.    Section 20 of Yahoo's Terms of Service purports to limit Defendant's liability for "unauthorized access" to its users' data.

111.    Yahoo admits in its Terms of Service that "some jurisdictions do not allow the exclusion of certain warranties or the limitation or exclusion of liability for incidental or consequential damages" and that "some of the above limitations of Sections 19 and 20 may not apply []."

112.    Pursuant to 28 U.S.C. § 2201, Plaintiff and members of the Class seek a declaration that Section 20 of Yahoo's Terms of Service, purporting to limit Yahoo's liability for "unauthorized access" to its users' data is unenforceable because it is procedurally and substantive unconscionable and against public policy, and/or because it violates Cal. Civ. Code § 1668 and/or Cal. Commercial Code § 2719.

113.    There is a bona fide dispute between Plaintiff and members of the Class and Yahoo such that a declaratory judgment is necessary to set forth the rights, obligations, and legal relations of the parties.

**FIFTH CLAIM**
**VIOLATION OF CALIFORNIA CIVIL CODE § 1798.80** *et seq.*
**On behalf of the Nationwide Class**

114.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

115.    Yahoo promised and was required to implement and maintain reasonable cyber-security measures to safeguard Plaintiff's and Class members' Personal Information but failed to do so.

116.    The breach announced by Yahoo on or about September 22, 2016 constitutes a "breach of the security system" within the meaning of section 1798.82(g) of the California Civil Code.

117.    The Personal Information of Plaintiff and members of the Class compromised by Yahoo constitutes "personal information" within the meaning of section 1798.80(e) of the California Civil Code.

118.    Pursuant to California Civil Code § 1798.80(e), Yahoo was required to disclose the data breach "in the most expedient time possible and without unreasonable delay . . . ."

119.    Yahoo violated California Civil Code § 1798.80 *et seq*. by unreasonably delaying disclosure of the Yahoo Breach to Plaintiff and members of the Class and by not informing Plaintiff and members of the Class of the Yahoo Breach in the most expedient time possible.

120.    Upon information and belief, no law enforcement agency instructed Yahoo that notification to Plaintiff and members of the Class would impede a criminal investigation.

121.    As a direct and proximate result of Yahoo's violation of California Civil Code § 1798.80 *et seq*., Plaintiff and members of the Class incurred damages, including, *inter alia*, expenses associated with monitoring their Personal Information to prevent identity theft and/or fraud.

122.    Pursuant to California Civil Code § 1798.84, Plaintiff and members of the Class seek actual damages, statutory damages, damages for Yahoo's willful, intentional, and/or reckless violation of California Civil Code § 1798.83, equitable relief, and reasonable attorneys' fees and costs.  *See* Cal. Civ. Code §1798.84(g).

**SIXTH CLAIM**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE § 17200,** *et seq.*
**On behalf of the Nationwide Class**

123.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

124.    California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), prohibits any "unlawful, unfair or fraudulent business acts or practices."

125.    At all relevant times, Yahoo has maintained its principal place of business and substantial operations in the State of California, and has regularly conducted business throughout the State of California.

126.    In violation of the UCL, Yahoo has engaged in "unlawful, unfair or fraudulent business acts or practices."

127.    Yahoo has violated the UCL in at least the following ways: (1) by failing to implement, test and maintain appropriate cyber-security measures; (2) by failing to protect and safeguard the Personal Information of Plaintiff and members of the Class from being lost, stolen, compromised, misused and/or disclosed to unauthorized users; (3) by failing to timely disclose to Plaintiff and members of the Class that their Personal Information was compromised, lost, stolen, misused and/or disclosed to unauthorized parties and precisely the type of information compromised; and (4) by violating California Civil Code § 1798.80 *et seq.*

128.    Yahoo has engaged in unfair and unlawful business acts and practices within the meaning, and in violation of, the UCL in that: (1) Yahoo's wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures are substantially injurious to Plaintiff and the Class, offend public policy, and/or are immoral, unethical, oppressive, and unscrupulous; (2) any justification for Yahoo's conduct would be outweighed by the gravity of the injury to Plaintiff and the Class; (3) there were reasonably available alternatives to further Yahoo's legitimate business interests other than engaging in the above-described wrongful conduct; and (4) Yahoo's conduct violates common and statutory law as alleged herein, including California Civil Code § 1798.80 *et seq.*

129.    The UCL also prohibits any "fraudulent business act or practice." Yahoo's above-described conduct, nondisclosures and misleading statements were false, misleading and likely to deceive Plaintiff and the Class in violation of the UCL.

130.    As a direct and proximate result Yahoo's unlawful, unfair and/or fraudulent conduct in violation of the UCL, Plaintiff and Class members have suffered injury in fact and will continue to be injured.

131.    As a direct and proximate result of Yahoo's violation of the UCL, Plaintiff and Class members incurred actual damages, including, *inter alia*, expenses associated with monitoring their Personal Information to prevent identity theft and/or fraud.

132.    Plaintiff and Class members seek all relief available under the UCL, including, but not limited to, restitution and/or restitutionary disgorgement of Yahoo's profits.

**SEVENTH CLAIM**
**VIOLATION OF THE MASSACHUSETTS REGULATION OF BUSINESS PRACTICE**
**AND CONSUMER PROTECTION ACT**
**MASSACHUSETTS GEN. L. CH. 93A**
**On behalf of the Massachusetts Sub-Class**

133.    Plaintiff incorporates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

134.    Plaintiff brings this claim on behalf of himself and members of the Massachusetts Sub-Class.

135.    Plaintiff and members of the Sub-Class are "person[s]" within the meaning of Mass. Gen. L. ch. 93A, § 1(a).

136.    Yahoo engaged and engages in "trade or commerce" within the meaning of Mass. Gen. L. ch. 93A, § 1(b).

137.    The Massachusetts Regulation of Business Practice and Consumer Protection Act ("Chapter 93A") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. ch. 93A, § 2(a).

138.    In violation of Chapter 93A, Yahoo engaged in unfair or deceptive acts or practices in the conduct of trade or commerce by requiring Plaintiff and Sub-Class members to provide Personal Information in exchange for email and/or other Yahoo services with the promise,

reasonable expectation and understanding that Yahoo would protect and safeguard that information from being lost, stolen, disclosed, compromised and/or misused by unauthorized users, and by failing to protect and safeguard that information.

139.    Yahoo promised and was required to implement and maintain reasonable cyber-security measures to safeguard Plaintiff's and Sub-Class members' Personal Information but failed to do so.

140.    Pursuant to 201 C.M.R. 17.00 *et seq*., Yahoo was required by Massachusetts law to safeguard the Personal Information of Plaintiff and Sub-Class members.

141.    Plaintiff and Sub-Class members are "person[s]" under 201 C.M.R. 17.02.

142.    Yahoo is a "service provider" under 201 C.M.R. 17.02.

143.    The breach announced by Yahoo on or about September 22, 2016 constitutes a "breach of the security system" within the meaning of 201 C.M.R. 17.02.

144.    Certain of the Personal Information is "personal information" under 201 C.M.R. 17.02.

145.    Pursuant to 201 C.M.R. 17.03, Yahoo had a duty to and was required to "develop, implement, and maintain a comprehensive information security program that is written in one or more readily accessible parts and contains administrative, technical, and physical safeguards that are appropriate to: (a)  the size, scope and type of business of the person obligated to safeguard the personal information under such comprehensive information security program; (b)  the amount of resources available to such person; (c)  the amount of stored data; and (d) the need for security and confidentiality of both consumer and employee information."

146.    Yahoo's safeguards were required to be "consistent with the safeguards for protection of personal information and information of a similar character set forth in any state or federal regulations by which [Yahoo] may be regulated." 201 C.M.R. 17.03.

147.    Pursuant to 201 C.M.R. 17.03, Yahoo was also required to, *inter alia*:

a.    Designat[e] one or more employees to maintain the comprehensive information security program;

b.   Identify[] and assess[] reasonably foreseeable internal and external risks to the security, confidentiality, and/or integrity of any electronic, paper or other records containing personal information, and evaluat[e] and improv[e], where necessary, the effectiveness of the current safeguards for limiting such risks . . .[;]

c.   Develop[] security policies for employees relating to the storage, access and transportation of records containing personal information outside of business premises[;]

d.   Impos[e] disciplinary measures for violations of the comprehensive information security program rules[;]

e.   Prevent[] terminated employees from accessing records containing personal information[;]

f.   Oversee service providers, by: 1. Taking reasonable steps to select and retain third-party service providers that are capable of maintaining appropriate security measures to protect such personal information consistent with 201 CMR 17.00 and any applicable federal regulations; and 2. Requiring such third-party service providers by contract to implement and maintain such appropriate security measures for personal information . . . .[;]

g.   [Implement] [r]easonable restrictions upon physical access to records containing personal information, and storage of such records and data in locked facilities, storage areas or containers[;]

h.   Regular[ly] monitor[] to ensure that the comprehensive information security program is operating in a manner reasonably calculated to prevent unauthorized access to or unauthorized use of personal information; and upgrading information safeguards as necessary to limit risks[;]

i.   Review[] the scope of the security measures at least annually or whenever there is a material change in business practices that may reasonably implicate the security or integrity of records containing personal information[;] [and]

---

j.       Document[] responsive actions taken in connection with any incident involving a breach of security, and mandatory post-incident review of events and actions taken, if any, to make changes in business practices relating to protection of personal information.

148.     Pursuant to 201 C.M.R. 17.04, Yahoo was required to have minimum cyber-security measures in place to protect Plaintiff's and Sub-Class members' Personal Information and was required to, *inter alia*, "reasonabl[y] monitor[] [its] systems, for unauthorized use of or access to personal information . . . ."

149.     In violation of Chapter 93A, Yahoo violated 201 C.M.R. 17.00 *et seq.* by failing to implement, test and maintain adequate cyber-security measures, by failing to reasonably monitor its systems for unauthorized use of or access to Personal Information, and by failing to meet the requirements of 201 C.M.R. 17.00 *et seq.*

150.     Pursuant to Mass. Ann. Laws ch. 93H, § 3(a), Yahoo was required to provide notice to Plaintiff and Sub-Class members "as soon as practicable and without unreasonable delay" from the time Yahoo knew or had reason to know of the Yahoo Breach.

151.     Pursuant to Mass. Ann. Laws ch. 93H, § 3(b), the notice provided by Yahoo was required to include, *inter alia*, "the consumer's right to obtain a police report, how a consumer requests a security freeze and the necessary information to be provided when requesting the security freeze, and any fees required to be paid to any of the consumer reporting agencies . . . ."

152.     Yahoo willfully and knowingly violated Mass. Ann. Laws ch. 93H, § 3 and Chapter 93A by failing to provide notice of the Yahoo Breach to Plaintiff and Sub-Class members "as soon as practicable and without unreasonable delay" and/or by failing to include the information required under Mass. Ann. Laws ch. 93H, § 3(b).

153.     As a direct and proximate result of Yahoo's violation of Chapter 93A, 201 C.M.R. 17.00 et seq., and/or Mass. Ann. Laws ch. 93H, § 3, Plaintiff and Sub-Class members incurred actual damages, including, *inter alia*, expenses associated with monitoring their Personal Information to prevent identity theft and/or fraud.

154.     Plaintiff and Sub-Class members seek all damages and equitable relief available under Chapter 93A, including, *inter alia*, actual damages, statutory damages, treble damages, punitive damages, attorneys' fees and disgorgement of profits.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant and in favor of Plaintiff and the Class and Sub-Class, and award the following relief:

a.     that this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and Sub-Class, and Plaintiff's counsel as counsel for the Class and Sub-Class;

b.     award Plaintiff and members of the Classes appropriate relief, including actual damages, statutory damages, treble damages, punitive damages, and restitutionary disgorgement;

c.     award equitable and declaratory relief as may be appropriate, including without limitation credit monitoring services and identity theft protection for  Plaintiff and members of the Classes;

d.     find that Yahoo's Terms of Service attempting to limit Defendant's liability are unenforceable;

e.     award all costs of prosecuting the litigation, including expert fees;

f.     award pre- and post-judgment interest;

g.     award attorneys' fees; and

h.     grant such additional relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury.

Dated: October 4, 2016                    Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
JENNIFER L. JOOST
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001
jjoost@ktmc.com

-and-

JOSEPH H. MELTZER
NAUMON A. AMJED
MELISSA L. TROUTNER
AYA M. SALEM
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
namjed@ktmc.com
mtroutner@ktmc.com
asalem@ktmc.com

*Attorneys for Plaintiff Brett Kaneshiro*